The STATE of Texas

v.

Paul David ROBINSON, Appellee.

No. PD–1206–10.

Court of Criminal Appeals of Texas.

March 16, 2011.

Stan Schwieger, Waco, for Appellant.

Jeffrey L. Van Horn, State Prosecuting Attorney, Austin, for State.

KELLER, P.J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY and COCHRAN, JJ., joined.

The issue in this case is the allocation of the burden of proof in a motion to suppress under Texas Code of Criminal Procedure Article 38.23. We hold that the defendant has the initial burden, which shifts to the State only when the defendant has produced evidence of a statutory violation. We shall reverse the judgment of the court of appeals.

## Background

Paul Robinson was arrested without a warrant for driving while intoxicated. He was transported to a hospital, where he consented to have his blood drawn. Analysis showed his blood alcohol concentration to be 0.14%. Robinson filed a motion to suppress the results, claiming that his blood was drawn without a warrant and

without consent, and that it was not drawn by a qualified person.[1] Thus, he claimed, it should have been suppressed under both the Fourth Amendment[2] and Article 38.23.[3]

The trial court held a hearing on the motion, beginning by telling appellee that since it was his motion, he should proceed. The State interrupted, agreeing to stipulate that the arrest was without a warrant, and that because of the stipulation, the State should go first. Appellee and the trial court both agreed. The State then called the only witness, Deputy Vercher.[4] Vercher testified to the circumstances of the arrest, but did not remember the name of, nor could he describe, the person who drew appellee's blood, at times simply calling the person a nurse, at other times stating that he did not know who drew the sample. Based on Vercher's testimony, the trial court suppressed the blood evidence, but not on Fourth Amendment grounds. Instead, the trial court suppressed the blood evidence based on the fact that "the State has not met the burden to prove that it was [a qualified person] that took it."

The 10th Court of Appeals affirmed the trial court's order. Chief Justice Gray dissented, arguing that the court erroneously placed the burden of proof on the State to prove statutory compliance.[5] The State now presents this Court with the following question:

At a hearing on a motion to suppress blood evidence, once the defendant established that he was arrested for driving while intoxicated without a warrant, does the burden of proof shift to the State to prove that the blood draw was taken in accordance with statutory requirements?

The State argues that the trial court improperly shifted the burden of proof on the 38.23 suppression issue. Because it stipulated only to the fact that appellee was arrested without a warrant, the State argues that it assumed the burden of proof only as to the warrantless arrest. Thus, according to the State, because appellee brought the motion to suppress, he retained the burden of proof to establish that the blood draw was not taken in accordance with the statutory requirements.

## Discussion

 When reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the ruling.[6] If the trial court makes findings of fact, we determine whether the evidence supports those findings.[7] We then review the trial court's legal rulings *de novo* unless the findings are dispositive.[8]

 A defendant who alleges a violation of the Fourth Amendment has the burden of producing evidence that rebuts

1. Texas Trans. Code § 724.017(a). "Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter."

2. U.S. Const. amend. IV.

3. Texas Code Crim. Proc. article 38.23.

4. The Deputy's name is spelled either Vercher or Burcher in different locations in the record. We will use Vercher for convenience.

5. *State v. Robinson*, No. 10–08–00185–CR (Tex.App.-Waco June 16, 2010).

6. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim.App.2006).

7. *Id.*

8. *Id.*

the presumption of proper police conduct.[9] He may carry this burden by establishing that the seizure occurred without a warrant.[10] The burden then shifts to the State to prove the reasonableness of the seizure.[11]

■ Likewise, a defendant who moves for suppression under Article 38.23 due to the violation of a statute has the burden of producing evidence of a statutory violation.[12] Only when this burden is met does the State bear a burden to prove compliance.[13] This procedure is substantially similar to that required when there is a motion to suppress under the Fourth Amendment, but it is a separate inquiry based on separate grounds.

■ In the case before us, the State stipulated to the warrantless arrest, thereby relieving appellee from the burden of rebutting the presumption of proper police conduct in making that arrest. Later, Vercher's testimony showed probable cause for the arrest and also showed that appellee consented to have his blood drawn. The trial court entered a finding that there were no grounds for suppression under the Fourth Amendment. The trial court also entered a finding that the evidence did not prove that the blood sample was drawn by a qualified person. This finding is inapposite, however, because even in the light most favorable to the ruling, appellee did not produce evidence of a statutory violation. Vercher's testimony that he did not remember who drew the blood sample is not evidence of a statutory violation. Even if the trial court disbelieved that part of Vercher's testimony

stating that a nurse drew the blood, there is still no evidence that the person who drew the blood was not qualified. Since appellee never produced evidence of a statutory violation, the State never had the burden to prove that the blood sample was drawn by a qualified person.

The record demonstrates that the trial court erroneously placed the burden of proving statutory compliance on the State.

We reverse the judgments of the courts below and remand the case to the trial court for further proceedings consistent with this opinion.

COCHRAN, J., filed a concurring opinion in which HERVEY, J., joined.

MEYERS, J., filed a dissenting opinion.

PRICE, J., filed a dissenting opinion.

JOHNSON, J., concurred.

COCHRAN, J., filed a concurring opinion in which HERVEY, J., joined.

I join the majority opinion. I write separately only to distinguish the shifting burdens at a motion to suppress hearing from those shouldered by the proponent of evidence at trial.

In a motion to suppress hearing, the movant is asserting some sort of illegal conduct, perhaps a violation of the federal constitution or perhaps a statutory violation. The law starts with the presumption of proper and lawful conduct. For example, it assumes that the police have acted in compliance with all constitutional and statutory requirements in making an arrest.[1] The defendant bears the burden of

---

9. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim.App.2009).

10. *Id.*

11. *Id.*

12. *Pham v. State*, 175 S.W.3d 767, 772 (Tex. Crim.App.2005).

13. *Id.*

1. *See Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim.App.1986) ("As the movant in a motion to suppress evidence, a defendant must pro-

producing evidence that shows that an arrest was illegally made, evidence was illegally obtained, and so forth. Once the defendant produces some evidence of impropriety or illegality, then the burden shifts to the State to rebut that showing. Normally, the burden of persuasion, as well as production, rests on the movant.[2] He must prove his case that the normal and proper procedures were not followed in a particular case.[3] However, with certain constitutional claims, once the movant has produced some evidence to rebut the presumption of proper police conduct, the prosecution must not only rebut the movant's evidence, but shoulder the ultimate burden of persuasion.[4]

For example, in this case, Mr. Robinson could meet his initial burden of showing an illegal arrest by producing some evidence that (1) he was arrested, and (2) the police did not have a warrant.[5] The burden would then shift to the State to show either (1) the police did, in fact, obtain a warrant, or (2) the reasonableness of the warrantless search.[6] Here, however, the State stipulated that this was a warrantless arrest, thus accepting the burdens of production and proof to show the reasonableness of the arrest.

Mr. Robinson also claimed that the person who withdrew his blood specimen at the hospital was not a qualified technician under Texas law.[7] He had the burden, therefore, to produce some affirmative evidence that the person who withdrew his blood was not qualified. If he made a *prima facie* showing that the person was not qualified, then the burden would shift to the State to rebut that showing.[8] But

---

duce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State."), *disapproved in part on other grounds by Handy v. State,* 189 S.W.3d 296, 299 n. 2 (Tex.Crim.App.2006); *see also Ford v. State,* 158 S.W.3d 488, 492 (Tex.Crim.App.2005) ("To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.").

2. *See Pham v. State,* 175 S.W.3d 767, 773–74 (Tex.Crim.App.2005) ("We have long held that 'the burden of persuasion is properly and permanently placed upon the shoulders of the moving party. When a criminal defendant claims the right to protection under an exclusionary rule of evidence, it is his task to prove his case.'") (quoting *Mattei v. State,* 455 S.W.2d 761, 766 (Tex.Crim.App.1970) which in turn was quoting *Rogers v. United States,* 330 F.2d 535 (5th Cir.1964)).

3. *See Rogers,* 330 F.2d at 542; *see also United States v. Waldrop,* 404 F.3d 365, 368 (5th Cir.2005) ("A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional."); *United States v. Evans,* 572 F.2d 455, 486 (5th Cir.1978) ("The burden is on the movant to make specific factual allegations of illegality, to produce evidence, and to persuade the court that the evidence should be suppressed.").

4. *See, e.g., United States v. de la Fuente,* 548 F.2d 528, 533–34 (5th Cir.1977) (setting out general rule that the movant bears burden of persuasion as well as production subject to certain well-defined exceptions, including (1) warrantless arrest, (2) a defendant's waiver of his right against self-incrimination in the context of a custodial interrogation, and (3) when defendant establishes existence of illegal wiretap; in each of those cases, the government must shoulder the burden of proof once the defendant produces evidence to support his claim).

5. *Russell,* 717 S.W.2d at 9.

6. *Id.* at 9–10.

7. *State v. Robinson,* 325 S.W.3d 212, 215 (Tex.App.-Waco 2010).

8. *See Roquemore v. State,* 60 S.W.3d 862, 869–70 (Tex.Crim.App.2001) ("[O]nce the defendant produces evidence of a [specific statutory] violation, the burden then shifts to the State to prove compliance with [that section].").

the burden on this statutory-compliance issue is not one of those special constitutional claims in which the State must shoulder the burden of proof once the defendant makes an initial showing. Here, the normal presumption of proper procedures and conduct thrusts both the burden of production and the ultimate burden of persuasion upon the movant.[9] This is a sensible policy because, in the vast majority of cases, a person who draws blood in a hospital is likely to be qualified to do so. When we go to the emergency room and have blood drawn, we do not normally ask the technician who draws it if he is qualified. As reasonable people, we presume that the hospital is unlikely to employ unqualified personnel. The law, like reasonable people, presumes that people do their jobs properly and that those who do a certain job are, in fact, qualified to do that job. There may be instances in which a rogue "Frank Abagnale Jr." [10]imposter sneaks into the hospital and takes over the technician's job, but these instances are so unlikely that the law casts both the burden of production and persuasion on the movant who is challenging the normal and probable routine.

In this case, Mr. Robinson did not produce even a scintilla of evidence that the person who drew his blood was unqualified. The only witness who testified at the hearing was Officer Vercher, the arresting officer, and he did not know precisely who drew the blood at the hospital. As the court of appeals stated,

As for the person who drew Robinson's blood, [Officer] Vercher said he did not know who the person was or remember what the person looked like. It was his first time to take a suspect to a hospital to have blood drawn. He did not write down the person's name, and he does not remember which arm the blood was drawn from, who prepared the site for the draw, or how the site was prepared.[11]

That testimony certainly does not show (or even suggest) that the person who drew Mr. Robinson's blood was unqualified. The court of appeals then noted, that, on redirect, Officer Vercher

said that a "nurse" in the emergency room took Robinson's blood sample. But on re-cross-examination, Vercher then admitted that his report states that an "emergency room technician" signed and sealed Robinson's blood specimen. In response to whether that emergency room technician was the same person as the "nurse" who took the blood or was just someone who witnessed it, Vercher said nonresponsively, "The same guy that took the blood has to sign off and seal it and put it back in the vile [*sic*]." Vercher did not recall whether the person did anything with the tube of blood, such as swirling it five times.[12]

While that testimony might raise some issue as to whether it was a nurse or an emergency room technician who drew the blood, it does not affirmatively show that either of them was unqualified to perform the job. Absent evidence to the contrary,

9. *See State v. Kelly,* 204 S.W.3d 808, 819 & n. 22 (Tex.Crim.App.2006) (movant in motion to suppress is "the party with the burden of proof [who] assumes the risk of nonpersuasion"; thus it was defendant's burden to produce evidence to support a finding that she did not consent to blood draw taken in hospital).

10. *See* CATCH ME IF YOU CAN (Dreamworks 2002), the movie based on the real life story of Frank Abagnale, Jr., who successfully impersonated a Pan–Am pilot, doctor, and prosecutor.

11. *Robinson,* 325 S.W.3d at 216.

12. *Id.* at 216–17.

reasonable people and the law presume that nurses and emergency room technicians are qualified to do their jobs.

In sum, there was no evidence that some unqualified imposter drew Mr. Robinson's blood. Thus, the burden never shifted to the State to rebut a *prima facie* showing of improper or unlawful conduct concerning the blood draw in the context of a motion to suppress.

Mr. Robinson contends that the State has the burden to show compliance with the state statute concerning the blood draw.[13] Indeed it does—at trial. As the proponent of evidence at trial, the State must fulfill all required evidentiary predicates and foundations. Thus, at trial, the State will be required to offer evidence that the blood was drawn by a qualified person before evidence of the blood, the blood test, and the blood test results are admissible. Its burden at trial is to establish the admissibility of its evidence by a preponderance of the evidence.[14]

At a motion to suppress hearing, however, it is the burden of the movant (the person who opposes use of the evidence) to establish that the evidence should not be admitted because of unlawful conduct.[15] And Mr. Robinson failed to satisfy both his burden of production and his burden of persuasion.

I join the majority opinion.

MEYERS, J., filed a dissenting opinion.

I agree that the court of appeals got it wrong, but for reasons different from the majority. Rather than remanding this case to the trial court, we should remand it to the court of appeals for them to consider whether Code of Criminal Procedure Article 38.23 applies when there was no violation of a law.

The blood evidence here was not obtained in violation of any provisions of the Constitution or the laws of the State of Texas or the United States. Texas Transportation Code Section 724.017 is a guideline for how a sanitary and uncontaminated blood sample should be taken. It is to protect the health of the person being tested and to protect the person taking the sample from liability. Failure to comply with Section 724.017(a) may result in an infection from unsanitary conditions or other issues that may arise from an untrained person taking the sample, but there are no legal or constitutional implications if it cannot be shown that the person who took a blood sample in a hospital was not "a physician, qualified technician, chemist, registered nurse, or licensed vocational nurse." It is possible that a blood sample taken by someone who is not qualified may be determined to be unreliable, but this is a question of admissibility to be raised at trial rather than a pre-trial suppression issue. Therefore, Article 38.23 does not apply in this case.

Appellee could have claimed at trial that, due to the lack of evidence regarding the qualifications of the person who drew the blood, the sample was unreliable and inadmissable. And, the State could have then presented evidence that the person who drew the blood was in fact qualified to do so under Section 724.017. That may be a difficult task in some cases since Section

---

13. *See* Tex. Transp. Code § 724.017(a) ("Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter.").

14. Tex.R. Evid. 104(a).

15. *See State v. Kelly*, 204 S.W.3d 808, 819 & n. 22 (Tex.Crim.App.2006) (stating that the party with the burden of proof assumes the risk of nonpersuasion).

724.017 does not define what makes someone a "qualified technician" or a "chemist." If we are going to say that failure to strictly comply with Section 724.017 results in the suppression of evidence, then we should first make sure the terms are specific enough for everyone to agree on.

Even though the court of appeals said that the trial court did not believe the officer's testimony and the State did not meet its burden of proof, the State's ground for review questioning whether the burden of proof shifted is irrelevant. We should send this case back to the court of appeals for them to look at the applicability of Article 38.23 instead of looking at who had the burden of proof.

Because the State is not entitled to relief, I dissent.

PRICE, J., filed a dissenting opinion.

In her concurring opinion, Judge Cochran asserts that "at trial, the State will be required to offer evidence that the blood was drawn by a qualified person [presumably, as mandated by Section 724.17(a) of the Transportation Code [1]] before evidence of the blood, the blood test, and the blood results are admissible." [2] Although she

cites no authority for this proposition, I believe it to be a correct statement of the law. But, given that the law requires the State to bear the burden of proving that Section 724.017(a) was satisfied as an evidentiary threshold at trial, I fail to see what sense it makes to assign the burden of proof differently when a defendant first broaches the issue in a pre-trial motion to suppress rather than waiting until trial to insist that the State be held to its evidentiary predicate.

We have observed that Section 724.064 of the Transportation Code constitutes a legislative determination "that breath test results should be admissible in DWI prosecutions without the necessity of establishing the scientific basis for [and hence, the reliability of] such tests under *Daubert* and *Kelly* [.]" [3] In *Reynolds v. State*, [4] also in the breath-test context, we have held that, notwithstanding Section 724.064's blanket determination that the science behind various forms of BAC analysis is reliable, the State must prove as a predicate fact to the introduction of intoxilyzer evidence that the intoxilyzer operator was properly certified under Section 724.016(a) of the Transportation Code. [5] Presumably the same

---

1. *See* Tex. Transp. Code § 724.017(a) ("Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter. The blood specimen must be taken in a sanitary place.").

2. Concurring opinion, at 782.

3. *Bagheri v. State,* 119 S.W.3d 755, 760 (Tex. Crim.App.2003) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kelly v. State,* 824 S.W.2d 568 (Tex.Crim.App. 1992)); *Stewart v. State,* 129 S.W.3d 93, 98 (Tex.Crim.App.2004) (same). *See* Tex. Transp. Code § 724.064 ("On the trial of a criminal proceeding arising out of [certain offenses, including DWI], evidence of the alcohol con-

centration ... as shown by analysis of the person's blood, breath, or urine or any other bodily substance taken at the request or order of a peace officer is admissible.").

4. 204 S.W.3d 386 (Tex.Crim.App.2006).

5. *See id.* at 390 & n. 26 ("In the context of breath test results, the Legislature has already determined that the underlying science is valid, and that the technique applying it is valid *as long as it is administered by individuals certified by, and using methods approved by the rules of, DPS.*" (emphasis supplied)); *see also Stevenson v. State,* 895 S.W.2d 694, 696 (Tex. Crim.App.1995) (scientific reliability of intoxilyzer test is established so long as the proponent of evidence of the test results shows that the provisions of predecessor to Tex. Transp. Code § 724.016 were satisfied).

principles that undergird our holding in *Reynolds* with respect to breath test results would hold true for blood test results as well. That being the case, while Section 724.064 of the Transportation Code may obviate any general threshold judicial inquiry into the scientific reliability of blood alcohol testing, it does not excuse the State, as proponent of such evidence, from making a predicate showing that the person who extracted the blood to be tested was statutorily qualified to do so under Section 724.017(a).

The appellant in *Reynolds* made an issue of whether the evidentiary predicate could be met in the context of a pre-trial hearing. That is what the appellant did here. I do not understand why, just because he challenges the admissibility of the State's BAC evidence in the context of a motion to suppress, the appellant should suddenly be made to shoulder what we would otherwise agree should be the State's burden of proof.

I respectfully dissent.