ACCEPTED
03-14-00702-CR
4766235
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/6/2015 10:26:15 AM
JEFFREY D. KYLE
CLERK

# IN THE THIRD COURT OF APPEALS
## AT AUSTIN, TEXAS

ANTONIOUS DESMOND          §
    BRINSON,          §
        APPELLANT          §

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/6/2015 10:26:15 AM
JEFFREY D. KYLE
Clerk

                    §          **CAUSE NO. 03-14-00702-CR**
**V.**          §          **TRIAL COURT NO. 72,150**
                    §

THE STATE OF TEXAS,          §
        APPELLEE          §

---

## BRIEF OF APPELLANT

---

**Appealed from the 264th Judicial District Court, Bell County, Texas**
**Hon. Martha J. Trudo, presiding**

---

**COPELAND LAW FIRM**
**P.O. Box 399**
**Cedar Park, TX  78613**
**Tel/Fax 512.215.8114**
**e-mail:  ecopeland63@yahoo.com**

**Tim Copeland**
**State Bar No. 04801500**
**Attorney for Appellant**

**APPELLANT HEREBY WAIVES ORAL ARGUMENT**

# TABLE OF CONTENTS

**Page**

**Table of Contents** *i*

**Index of Authorities** *ii-iii*

**Identity of Parties and Counsel** 1

**Statement of the Case** 2

**Issue Presented** 3

The evidence is legally insufficient to support Brinson's conviction. Specifically, the evidence was insufficient to permit the jury to conclude that Brinson intentionally, knowingly, or recklessly caused bodily injury to the complainant by hitting her with his fists or with a baseball bat.

**Statement of Facts/Background** 4

**Summary of the Argument** 5

**Statement of Pertinent Evidence** 6

**Argument** 10

**Prayer** 15

**Certificate of Service and Compliance with Rule 9** 16

# INDEX OF AUTHORITIES

| **Authorities** | **Page** |

## United States Supreme Court cases

*Jackson v. Virginia*
    443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979)    **10,12,13**

## Texas Court of Criminal Appeals' cases

*Bolton v. State*
    619 S.W.2d 166 (Tex. Crim. App. 1981)    **13**

*Brooks v. State*
    323 S.W.3d 893 (Tex. Crim. App. 2010)    **10**

*Cada v. State*
    334 S.W.3d 776 (Tex. Crim. App. 2011)    **11**

*Geick v. State*
    349 S.W.3d 542 (Tex. Crim. App. 2011)    **11**

*Hooper v. State*
    214 S.W.3d 9 (Tex. Crim. App. 2007)    **11**

*Isassi v. State*
    330 S.W.3d 633 (Tex. Crim. App. 2010)    **10**

*King v. State*
    29 S.W.3d 556 (Tex. Crim. App. 2000)    **12**

*King v. State*
    95 S.W.2d 701 (Tex. Crim. App. 1995)    **12**

# INDEX OF AUTHORITIES, continued

**Authorities**                                                          **Page**

## Texas Court of Criminal Appeals' cases, continued

*Lane v. State*
  763 S.W.2d 785 (Tex. Crim. App. 1989)                              **13**

*Laster v. State*
  275 S.W.3d 512 (Tex. Crim. App. 2007)                             **12**

*Malik v. State*
  953 S.W.2d 234 (Tex. Crim. App. 1997)                             **11**

## Texas Court of Appeals' cases

*Arzaga v. State*
  86 S.W.3d 767 (Tex. App.- El Paso 2002, no pet.)                  **13**

## Statutes

**TEX. PENAL CODE ANN. §§22.01(a)(1), (b)(2)(A),
(B) (West 2013)**                                                   **2,12**

**TEX. PENAL CODE §1.07(a)(8) (West 2013)**

**TEX. FAM. CODE §71.0021. 71.003 and 71.005 (West 2014)**          **6**

**TEX. R. APP. PROC. 9.10(a)(3)(West 2014)**                        **7**

| | | | |
|---|---|---|---|
| ANTONIOUS DESMOND BRINSON, | § | | |
| APPELLANT | § | | |
| | § | CAUSE NO. 03-14-00702-CR | |
| V. | § | TRIAL COURT NO. 72,150 | |
| | § | | |
| THE STATE OF TEXAS, | § | | |
| APPELLEE | § | | |

## IDENTITY OF PARTIES AND COUNSEL

**TO THE HONORABLE COURT OF APPEALS:**

**NOW COMES** Antonious Desmond Brinson, appellant, who would show the Court interested parties herein are as follows:

**ANTONIOUS DESMOND BRINSON**, appellant.

**TIM COPELAND**, appellate attorney for appellant, P.O. Box 399, Cedar Park, Texas 78613.

**JOHN GALLIGAN**, trial attorney for appellant, 315 South Main, Belton, Texas 76513.

**MICHAEL WALDMAN, ANN JACKSON**, and **BOB ODOM**, Assistant Bell County District Attorneys, trial and appellate attorneys, respectively, for the State of Texas, appellee, P.O. Box 540, Belton, Texas 76513.

# IN THE THIRD COURT OF APPEALS
## AT AUSTIN, TEXAS

| | | |
|---|---|---|
| ANTONIOUS DESMOND BRINSON, | § | |
| APPELLANT | § | |
| | § | CAUSE NO. 03-14-00702-CR |
| V. | § | TRIAL COURT NO. 72,150 |
| | § | |
| THE STATE OF TEXAS, | § | |
| APPELLEE | § | |

## STATEMENT OF THE CASE

**TO THE HONORABLE COURT OF APPEALS:**

Antonious Desmond Brinson was convicted by jury of assault with bodily injury of a family member with prior family violence. *See* **TEX. PENAL CODE §22.01(a)(1), (b)(2)**; **TEX. FAM. CODE §71.005 (West 2014)** and R.R. 7, p. 144. After the jury found him guilty of the charged offense, Brinson pleaded "true" to an enhancement paragraph. (R.R. 8, p. 5). The jury heard evidence and argument of counsel and assessed his punishment at confinement in the Texas Department of Criminal Justice's Institutional Division for thirteen years and imposed a $1,000.00 fine. (R.R. 8, p. 41). Brinson gave due notice of appeal from the verdict and sentence. (C.R. 1, p. 91).

## ISSUE

The evidence is legally insufficient to support Brinson's conviction. Specifically, the evidence was insufficient to permit the jury to conclude that Brinson intentionally, knowingly, or recklessly caused bodily injury to the complainant by hitting her with his fists or with a baseball bat.

ANTONIOUS DESMOND BRINSON,   §
      APPELLANT          §
                            §    **CAUSE NO. 03-14-00702-CR**
V.                          §    **TRIAL COURT NO. 72,150**
                            §
THE STATE OF TEXAS,       §
      APPELLEE           §

## STATEMENT OF FACTS/BACKGROUND

Witnesses testified that Brinson arrived at Javanda Johnson's apartment one evening after both had been drinking and that he asked her to step outside to talk. (R.R. 6, pp. 65, 97-99, 15) The two had a child together and were in a dating/spousal relationship. They began to argue, and Johnson picked up a baseball bat from the yard and swung it at Brinson. (R.R. 6, 7, pp. 66-69, 17 respectively). Johnson missed, but both fell to the ground struggling for control of the bat. Whether Brinson hit Johnson intentionally with the bat as the two wrestled for its control or whether Johnson was hit accidentally when she suddenly released her hold on the bat was disputed. In any event, Johnson suffered a severe bump on the side of her head, but she declined to file charges against Brinson that evening, and she sought to have the charges that were filed against him later dismissed. (R.R. 6, p. 23 and *see* R.R. 7, pp. 55, 57). Brinson, who had a prior conviction for family assault, was convicted by a Bell County jury of assault

Cause No. 03-14-00702-CR
*Antonious Desmond Brinson v. The State of Texas*
Brief of Appellant                                 4

family violence with prior family violence. Brinson was ultimately assessed an enhanced sentence of thirteen years' imprisonment and was fined $1,000.00 by the jury. Brinson argues here that evidence of his guilt was legally insufficient.

## SUMMARY OF THE ARGUMENT

Very clearly, the State proved that Brinson had a previous conviction for family violence assault from 2009. However, the evidence that he committed a new family violence assault as charged in this case, even when viewed in the light most favorable to the verdict, is insufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. Neither the evidence adduced nor the State's argument prove the allegations in Brinson's indictment. Here, a rational jury must have concluded that Johnson was the aggressor in the case; that she armed herself with a bat preparatory to attacking Brinson and that her injury could not be attributed to an intentional or reckless action on his part. Instead, the credible evidence amounted only to a modicum, and in light of that, the verdict and sentence must be reversed.

## ISSUE

The evidence is legally insufficient to support Brinson's conviction. Specifically, the evidence was insufficient to permit the jury to conclude that Brinson intentionally, knowingly, or recklessly caused bodily injury to the complainant by hitting her with his fists or with a baseball bat.

## STATEMENT OF PERTINENT EVIDENCE

*Indictment*

Brinson's indictment alleged in pertinent part that he did "on October 20, 2013, … intentionally, knowingly or recklessly cause bodily injury to Javonda Johnson, … a person with whom the defendant had a dating relationship, and who are the parents of the same child as described by **§71.0021(b), 71.003 and 71.005, Texas Family Code**, by hitting and pushing and striking the said Javonda Johnson with the hands and fists of Defendant and by hitting and striking the said Javonda Johnson in the head and face with a metal baseball bat.

--(C.R. 1, p. 4)

His indictment also alleged a previous conviction on October 9, 2012 for assault/bodily injury on a family member for enhancement purposes.

*Trial Evidence*

Killeen police officer Caleb Williams responded to a 9-1-1 domestic violence call in Killeen on October 20, 2013. On arrival, he saw that Javonda Johnson had a large swelling on her forehead. (R.R. 6, p. 23). Johnson was angry and described Brinson, who left the scene before Williams' arrival, as her assailant. Williams eventually took Johnson's statement and those of her two daughters, ages 12 and 13. (R.R. 6, p. 28). Williams testified that while Johnson said Brinson was her assailant, she did not tell him that she had picked up a bat and swung it at Brinson to begin their confrontation. Neither did she tell him that her head injury

occurred as she struggled with Brinson over control of the bat or that she accidently hit herself with the bat during their scuffle. (R.R. 6, pp. 40, 56). Before Williams left, Johnson told him that she did not want to file criminal charges against Brinson, and she signed a "release of obligation" to that effect. (R.R. 6, p. 29 and, *see* State's Exhibit 9). Williams left Johnson's house having completed his investigation of the incident.

M.J.[1], Johnson's daughter, testified that she answered Johnson's door on October 20, 2013, to Brinson's knock. Johnson, she said, went out to talk to Brinson, and M.J. saw Johnson pick up a bat from the yard. (R.R. 6, pp. 65-68). M.J. said that she saw Johnson miss Brinson when she swung at him with the bat before they both fell to the ground. (R.R. 6, pp. 69-70). M.J. opined that both Johnson and Brinson were drunk during their encounter. (R.R. 6, p. 69). M.J. also testified that when the two adults fell to the ground, Brinson "was hitting [Johnson] in the face with [the bat]" and Johnson "was trying to stop it." (R.R. 6, p. 72). The state refreshed M.J.'s memory with the statement she had given Williams on the 20th, and M.J. admitted that she had not said anything to that officer about Johnson arming herself with a bat or about Johnson swinging the bat at Brinson before they fell to the ground. (R.R. 6, pp. 76-77). Nevertheless, M.J. emphatically reiterated that her mother had, in fact, first tried to hit Brinson with the bat. In fact, M.J.

---

[1] All witnesses who were minors at the time the alleged offense was committed are referred here by initials to protect their identity. *See* **TEX. R. APP. PROC. 9.10(a)(3)**.

testified, as Johnson had approached Brinson with the bat, M.J. Johnson told Brinson, "(i)f you're going to hit me, hit me", whereupon Johnson had banged the bat upon the ground. (R.R. 6, p. 84). M.J. testified that she thought her mother was hit twice with the bat while she and Brinson struggled on the ground, at least once clearly accidentally. (R.R. 6, pp. 86, 40). She said that after Johnson was hit in the head, "they both let go of the bat, and [Brinson] walked off, but [Johnson] got up and slapped him." (R.R. 6, p. 86). M.J. testified that she never heard Brinson threaten Johnson. Neither did she see him stand up and swing the bat at Johnson once he had control of it. (R.R. 6, p. 87). On re-direct by the state, however, M. J. confirmed that in the original statement she had given Officer Williams, she had told him that she thought Brinson hit Johnson "on purpose." (R.R. 6, p. 94).

T.Q., described as another of Brinson's step-daughters, testified that she was taking care of the other children in the home when Johnson walked out the front door to talk to Brinson. (R.R. 6, pp. 103-104). T.Q. confirmed that she saw her mother pick the bat off the ground as she approached Brinson. (R.R. 6, p. 108). She testified that she turned back into the house to check on the other kids, and when she turned back around, Brinson and Johnson were "fighting" on the ground, wrestling for control over the bat, screaming and cursing each other. (R.R. 6, p. 108). T.Q. said that she saw the bat hit her mother when Johnson was "pushing it

away… she let go, and it hit her in the face." (R.R. 6, p. 105). T.Q. testified that she called 9-1-1. (R.R. 6, p. 109). T.Q.'s trial testimony was also somewhat different from the statement she gave Officer Williams on the 20th. In her statement to Williams, T.Q. said that Brinson "attacked [Johnson] with a metal baseball bat and punched and drug her." (R.R. 6, p. 113). She admitted that she had not told Williams that her mother had armed herself with a bat. Neither had she told him that Johnson had swung the bat at Brinson to start their confrontation. (R.R. 6, p. 114).

Javonda Johnson testified that she lived with her eight children, only one of whom was Brinson's, in Killeen on Poage St. on October 20, 2013, and that Brinson occasionally stayed with her at that address. (R.R. 7, p. 9). She also testified that she had been drinking and arguing with Brinson most of the day on the 20th; that he had left the apartment that afternoon to drink with friends, and that he returned about 8:15 that evening. She opined that on his return Brinson was intoxicated…, and she admitted that she was. (R.R. 7, p. 13). She testified that she went outside to talk to Brinson when he drove up with his friends and a cousin. Because she was angry with Brinson, on her way into the yard she said that she armed herself with a metal baseball bat. (R.R. 7, p. 17). Asked what happened after she picked up the bat, Johnson testified that she did not recall. "All that I remember," she said, "is that we were struggling over the bat. I fell to the ground,

and when I came back up. I had a knot." (R.R. 7, p. 17). She did not remember Brinson swinging the bat at her; she just remembered they both had their hands on the bat on the ground. (R.R. 7, p. 17). Johnson's testimony at trial was inconsistent with both a 9-1-1 tape (State's Exhibit 7) and her statement to Officer Williams. On the 9-1-1 tape, she can be heard to say that Brinson had grabbed the bat, "threatened to kick her ass" and then "pretty much" had done just that. (*See,* State's Exhibit 7 and R.R. 7, p. 24). She made the same accusation in her original statement to Officer Williams. (R.R. 7, p. 24). Finally, in her release of obligation where she declined to press charges, she mentions that she was "assaulted by a bat." (R.R. 7, p. 28). At trial, however, Johnson explained that she had been "intoxicated and angry" when she talked to Williams that evening. (R.R. 7, p. 49). She emphatically denied that Brinson had intentionally attacked her with the bat or that she had been the victim of his assault. (R.R. 7, pp. 55, 57). Instead, she reiterated that she believed that Brinson had not intended to harm her. (R.R. 7, p. 45).

## ARGUMENT

*Standard of Review*

In an appellate court's due-process review of the sufficiency of the evidence to support a conviction, a reviewing court views all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The essential elements of the crime are those defined by the hypothetically correct jury charge. *Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A reviewing court thus measures the sufficiency of the evidence by the essential elements as defined by the hypothetically correct charge. *Cada v. State*, 334 S.W.3d 776, 773 (Tex. Crim. App. 2011). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. [B]efore something may be an element of the offense in the hypothetically correct jury charge, it must be 'authorized by the indictment.'" *Cada*, 334 S.W.3d at 773 (footnotes omitted). The jury is the sole judge of the weight and credibility of the witnesses. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). It is the role of the jury to resolve any conflicts of testimony and to draw rational inferences from the facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record contains conflicting inferences, a reviewing court is required to presume the jury resolved such facts in

favor of the verdict and defer to that resolution. ***Brooks***, 323 S.W.3d at 984-95. On appeal, the reviewing court's role is only to ensure the jury reached a rational verdict. It does not reevaluate the weight and credibility of the evidence produced at trial and does not substitute its judgment for that of the fact finder. ***King v. State***, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). This standard is the same for both direct and circumstantial evidence. ***King v. State***, 95 S.W.2d 701, 703 (Tex. Crim. App. 1995). Reviewing courts have held the evidence to be insufficient under the ***Jackson*** standard in two circumstances: (1) the record contained no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively established a reasonable doubt. *See* ***Jackson***, 443 U.S. at 314, 318 n. 11,320, 99 S. Ct. at 2786, 2789 n. 11, 789; *see also* ***Laster v. State***, 275 S.W.3d 512, 517 (Tex. Crim. App. 2007).

*Application*

To prove that Brinson committed assault-family the State had to establish beyond a reasonable doubt that Brinson intentionally, knowingly, or recklessly caused bodily injury to Johnson, a member of Brinson's family or household by hitting or striking Johnson with his fists or a baseball bat. *See* **TEX. PENAL CODE §22.01(b)(2)(B) (West 2013)**. To prove that Brinson committed assault-family violence subject to enhancement, the State was required to establish beyond a reasonable doubt that he intentionally, knowingly, or recklessly caused bodily

injury to Johnson, a member of his family or household and that he had a previous conviction for assault-family violence. *See* **TEX. PENAL CODE §22.01(b) (2)(A) (West 2013)**. Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *See* **TEX. PENAL CODE §1.07(a) (8) (West 2013)**. The definition is broad and encompasses even relatively minor physical contacts as long as they consist of more than mere offensive touching. *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (evidence of bodily injury sufficient when complainant suffered pain and bruise from appellant grabbing her wallet and twisting it away); *see also Bolton v. State*, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981) (evidence of cut sufficient to show bodily injury); *Arzaga v. State*, 86 S.W.3d 767, 778-79 (Tex. App.- El Paso 2002, no pet.) (evidence of swelling and bruising of lips sufficient to show bodily injury).

*Analysis*

The evidence adduced at Brinson's trial does not conclusively establish a reasonable doubt that Brinson committed family violence assault, one of the circumstances which provides relief under the *Jackson* standard, but neither does the evidence establish beyond a reasonable doubt that he did commit the offense. In fact, there is only a modicum of evidence at trial suggesting an intentional, knowing or reckless act on Brinson's part and thus only a modicum of evidence of his guilt, the other circumstance under *Jackson* to justify relief.

The consensus among the various witnesses during trial was that:

- Brinson arrived at Johnson's home on the 20th when both were angry and drunk;

- Johnson armed herself with a bat and, after arguing and cursing at each other, swung it at Brinson at the start of their confrontation;

- both Brinson and Johnson fell to the ground holding the bat;

- Johnson sustained a "knot" on her head while both were on the ground grappling for control of the bat;

- after Johnson sustained a blow to her head from the bat, she and Brinson separated, stood up from the ground, and Brinson left the scene without further incident.

Those points were made by the state's primary witnesses, M.J. and T.Q., who were unequivocal in their testimony that Johnson armed herself with the bat as she approached Brinson in the front yard. (R.R. 6, pp. 89, 107 and 122, respectively). M.J. testified that Johnson banged the bat on the ground before she took a swing at Brinson, and they both fell to the ground. (R.R. 6, p. 84). Further, Johnson herself admitted in trial that she approached Brinson that evening with the bat in hand. Finally, she said that she did not remember much about her encounter with Brinson, but she did believed Brinson had not meant to hit her with the bat as they struggled on the ground before he left. (R.R. 7, p. 55). If the so-called

inconsistent statements all three made on the night in question, including their conversations with a 9-1-1 operator, are viewed as having been made in the heat of anger, confusion, and, with regard to the children in particular, to paint a picture that Johnson was a victim, it is understandable why their trial testimony differed somewhat, although not really that significantly, from their earlier statements. Thus, a review of all the evidence here that finds the evidence of guilt to be insufficient does not necessarily mean that the reviewing court has re-evaluated the weight and credibility of the evidence produced at trial, and it does not mean that the reviewing court has substituted its judgment for that of the fact finder. Rather, in reaching that decision, the court has only reconciled *all* the evidence in the light most favorable to the verdict and found it lacking; in effect found that there is only a modicum of evidence of guilt which is insufficient to sustain the jury's finding.

## PRAYER

**WHEREFORE**, Mr. Brinson prays that this Court of Appeals reverse the judgment of the trial court and order an acquittal, or, in the alternative, enter such other orders as may be appropriate with its decision herein.

**COPELAND LAW FIRM**
P.O. Box 399
Cedar Park, TX 78613
Phone: 512.897.8126
Fax: 512.215.8114

e-mail:  tcopeland14@yahoo.com

By:    /s/     Tim Copeland
             Tim Copeland
             State Bar No. 04801500
             Attorney for Appellant

## CERTIFICATE OF SERVICE AND OF
## COMPLIANCE WITH RULE 9

This is to certify that on April 6, 2015, a true and correct copy of the above and foregoing document was served on Bob Odom, Assistant District Attorney of Bell County, P.O. Box 540, Belton, Texas 76513, in accordance with the Texas Rules of Appellate Procedure, and that the Brief of Appellant is in compliance with Rule 9 of the *Texas Rules of Appellate Procedure* and that portion which must be included under Rule 9.4(i)(1) contains  3408 words.

/s/     Tim Copeland
Tim Copeland