**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00361-CR**
_____

**ALEXANDER KEVIN DURAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 1**
**Montgomery County, Texas**
**Trial Cause No. 17-323878**

**MEMORANDUM OPINION**

In an appeal from a conviction arising from an information charging him with

a misdemeanor DWI, Alexander Kevin Duran argues the trial court should have

excluded evidence about the results of the testing the State did on a specimen of his

blood. According to Duran, the State never met the burden he argues it had to show

his blood was drawn under the conditions that must be met for a police officer to

1

order certain licensed medical personnel to draw a specimen of someone's blood.[1]

In cases involving blood draws ordered by peace officers, the burden to produce evidence showing that a blood draw occurred in circumstances that violated section 724.017 of the Texas Transportation Code is on the defendant, not the State.[2] Because Duran failed to meet his burden, we conclude the burden of proof never shifted to the State to prove the blood draw occurred under conditions that met the relevant blood-draw statute. Thus, the trial court did not abuse its discretion by overruling Duran's objections in the trial to the evidence describing the tests the Department of Public Safety's crime lab performed on his blood. We affirm.

## Background

In July 2017, while traveling southbound on Highway 59, a motorist saw a truck weave across multiple lanes of traffic, leave the highway, and jump the curb. The motorist took an exit from the highway, where he saw a highway patrolman. The motorist stopped and told the trooper what he had seen. After the trooper, John Sullivan, gave chase, he saw Duran's truck "go up onto the curb" with its blinker on.

---

[1] The Texas Transportation Code provides that, based on the order of a peace officer, a physician, qualified technician, registered professional nurse, vocational nurse, emergency medical technician-intermediate, or emergency medical technician-paramedic may take a specimen of a person's blood. Tex. Transp. Code Ann. § 724.017(a). The statute also provides the specimen must be taken in a sanitary place. *Id.* § 724.017(a-1).

[2] *State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011).

Trooper Sullivan stopped Duran's truck. Upon approaching the truck, Duran got out and seemed "kind of unsteady on his feet[,]" according to Sullivan. The trooper noticed Duran was having "facial tr[em]ors [in] his hands" and that he had "white on the edges of his mouth." According to Sullivan, Duran "seemed confused" about where he was going. When asked whether he had taken any medications that day, Duran told the trooper he was taking an anticonvulsant, but "that's about it."

After stopping Duran, Sullivan gave him the standard field sobriety tests. Trooper Sullivan explained the tests revealed multiple positive clues of intoxication. Sullivan also testified that, based on the evidence he gathered during the stop, he believed Duran was driving under the influence of drugs.

After arresting Duran, Sullivan asked Duran for a specimen of his blood. After Duran agreed to provide a specimen, Sullivan took him to a hospital. At the hospital and at Sullivan's request, a nurse drew a specimen of Duran's blood. Sullivan described what he saw when he watched the nurse draw the specimen. For instance, Sullivan explained that he saw the nurse clean Duran's arm before drawing the specimen.

The State did not call the nurse who drew Duran's specimen in the trial. Instead, it introduced evidence describing the results of the testing on the blood the

nurse obtained through Dan Rios, a forensic scientist employed by the Department of Public Safety's crime lab. Rios tested the specimen for the presence of drugs.

Before Rios testified, the trial court conducted a hearing to decide whether to allow Rios to testify before the jury. During the hearing, Rios agreed he did not know what qualifications the person had that drew Duran's specimen. He also agreed he did not know whether the specimen was drawn in a sanitary place. Rios explained, however, that the paperwork he received with the specimen identified "an RN" as the person who drew the specimen on which he performed his tests.

At the end of the hearing, Duran argued the State had not met its burden to show two things:

- the nurse who drew the specimen was an individual who had the qualifications described in section 724.017; and
- the specimen was drawn in a sanitary place.

The court denied Duran's motion to exclude Rios's testimony. During the trial, the trial court allowed the jury to hear Rios testify about the results of the testing that he performed on the specimen.

While before the jury, Rios testified that his testing revealed the specimen contained three drugs: (1) carisoprodol, which Rios explained is a muscle relaxer and central nervous system suppressant; (2) hydrocodone, which Rios described as a painkiller; and (3) meprobamate, which Rios described as a metabolite produced

4

when the body converts carisoprodol that has "an effect on the body just as much as the [c]arisoprodol." In one appellate issue, Duran argues the "trial court erred in admitting evidence of the blood analysis because the State failed to prove the blood specimen was taken in compliance with . . . [section] 724.017."

## Standard of Review

The record before us is silent about the reasons the trial court denied Duran's motion. When the parties never gave the trial court the opportunity to explain why it ruled on a motion to suppress by providing the parties with express findings, we imply the findings necessary to support the ruling made in the trial if the evidence, when viewed in the light most favorable to the trial court's ruling, supports the implied findings that are needed to support the ruling.[3] We then review the trial court's application of law to the facts using a de novo standard.[4]

## Analysis

Duran argues testimony about the results of the testing on his specimen should not have been admitted in his trial because the State failed to meet its burden to prove that Duran's specimen was drawn in a manner consistent with those required by section 724.017 of the Texas Transportation Code. Under section 724.017, peace

---

[3] *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).
[4] *Id.*

5

officers have the authority to order certain qualified persons to draw another's specimen.[5] Relying on arguments claiming the State did not meet its burden to prove the person who drew his specimen was qualified to do so or to show that the draw occurred in a sanitary place, Duran concludes the trial court erred by failing to suppress the evidence the State obtained by testing the blood it procured in the draw.[6]

When a defendant seeks to suppress evidence that he claims the State obtained in violation of the requirements of section 724.017, the defendant is the party that bears the burden to produce evidence that a statutory violation occurred.[7] If the defendant produces some evidence to meet his burden, the burden then shifts to the State to produce enough evidence to allow the trial court to find that the draw complied with the requirements of section 724.017.[8]

In his brief, Duran relies on Trooper Sullivan's and Rios's testimony that they had no personal knowledge about the qualifications of the person who drew Duran's specimen to show that his specimen was not drawn by a person who held one of the licenses described in section 724.017.[9] But the fact Sullivan and Rios did not know

---

[5] Tex. Transp. Code Ann. § 724.017.

[6] Tex. Code Crim. Proc. Ann. art. 38.23(a) (providing that evidence obtained in violation of the laws of the State of Texas are inadmissible in the trial of a criminal case).

[7] *Robinson*, 334 S.W.3d at 779.

[8] *Id.*

[9] *See* Tex. Transp. Code Ann. § 724.017(a).

6

about how the nurse that drew Duran's blood was licensed is no evidence proving she did not hold one of the types of licenses that is described in section 724.017.[10] Additionally, none of the testimony in the record supports an inference that shows the draw occurred in a place that was not sanitary.[11]

We conclude Duran failed to meet his burden to show the draw violated section 724.017.[12] For that reason, the trial court did not err by denying Duran's request to exclude Rios's testimony about the testing he performed on Duran's blood. We overrule Duran's issue and affirm the judgment of conviction finding Duran guilty of the misdemeanor DWI.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on May 22, 2020
Opinion Delivered September 30, 2020
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

---

[10] *See Robinson*, 334 S.W.3d at 779.
[11] *Id.*
[12] *Id.*