**Opinion filed July 27, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00025-CR

_____

## STEPHEN WAYDE MEADE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR26662**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Stephen Wayde Meade, of felony driving while intoxicated. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b) (West Supp. 2022). The trial court assessed his punishment at confinement for a term of thirty years in the Institutional Division of the Texas Department of Criminal Justice.

In this appeal, we must determine whether the trial court erred when it allowed a witness during the State's case-in-chief—who tested positive for COVID-19 shortly before trial—to testify via two-way remote teleconferencing. We conclude that the State satisfied the requirements for remote testimony under the Sixth Amendment, as articulated in *Haggard v. State*, 612 S.W.3d 318, 325 (Tex. Crim. App. 2020), and we affirm.

*Background Facts*

On December 14, 2018, Appellant crashed his Chevrolet pickup into the back of a GMC Yukon. Brownwood Police Department Officers Kayla Moore and Joshua Holmes were dispatched to the scene. With Appellant's permission, Officer Moore entered the pickup to retrieve his insurance card. When Officer Moore opened the door to the pickup, however, she detected the strong odor of alcohol emitting from the vehicle. She also noticed a 32-ounce cup that smelled like alcohol within the pickup. Appellant admitted to drinking three hours prior to the accident. Officer Moore observed that Appellant had a "disheveled look," "glossy eyes," and slurred speech. She then administered standardized field sobriety tests to determine if Appellant was intoxicated. As a result of her investigation, Officer Moore arrested Appellant for driving while intoxicated.

It is undisputed that, following his arrest, Appellant consented to provide a blood sample. Appellant was then taken to a hospital where his blood was drawn by phlebotomist Sharon Hope. Appellant's blood sample was later tested by Sarah McGregor, a forensic scientist with the Texas Department of Public Safety. McGregor's test results indicated that Appellant had a blood alcohol level of 0.217.

Prior to jury selection, the State announced that Hope had tested positive for COVID-19 on the previous Saturday, and it requested that she be allowed to "testify via Zoom." After some discussion, the trial court inquired as to whether the parties

2

wanted an immediate ruling or whether the issue could be taken up at a later time. In response, the State and Appellant each agreed that the issue could be taken up at a later time. Subsequently, after a hearing relating to the chain of custody of the blood sample, the trial court admitted the physical blood sample and related materials but reserved the question of whether the lab results themselves were admissible. The case then proceeded to trial.

In an effort to establish the intoxication element of the offense, the State sought to prove that Appellant's blood alcohol concentration was in excess of 0.08. *See* TEX. PENAL CODE §§ 49.04(a), 49.01(2)(B) (West 2011). The State offered into evidence the laboratory results of a blood alcohol test that was performed by McGregor.

When McGregor was asked about the results of the test, counsel for Appellant objected that there was no evidence that the blood sample at issue had been obtained by a person who was qualified to perform the procedure. As a result of this objection, the State sought to call Hope to testify via Zoom, a computer application that features remote two-way teleconferencing. The trial court then proceeded with a hearing to determine whether Hope would be allowed to testify before the jury via two-way teleconferencing. Hope testified remotely at the hearing, over the objection of counsel for Appellant.

Following the hearing, counsel for Appellant objected to remote testimony from Hope, arguing that it violated Appellant's rights under the Confrontation Clause in the Sixth Amendment. The trial court overruled the objection. Hope then briefly testified before the jury, describing her qualifications as a phlebotomist, the process by which she took the blood sample, and the cleanliness of the area where the blood sample was drawn.

*Analysis*

In his sole issue on appeal, Appellant complains that the trial court erred when it allowed Hope to testify via remote two-way teleconferencing.

At the time of trial, in January 2022, testimony by teleconferencing was permissible as a result of the COVID-19 pandemic under the supreme court's *Forty-Fifth Emergency Order Regarding the COVID-19 State of Disaster*, 660 S.W.3d 84, 86 (Tex. 2021). However, the order provided that the use of teleconferencing is "[s]ubject to constitutional limitations." *Id.* at 85. As such, the question presented in this case is whether the trial court violated Appellant's constitutional rights when it allowed Hope to testify through remote teleconferencing.

Appellant maintains that the use of remote teleconferencing in this instance violates his right to confront his accusers under the Sixth Amendment. The Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend VI. It provides criminal defendants with the right to physically confront those who testify against them. *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988) (the Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact"). However, the right to a face-to-face meeting is not absolute. *Maryland v. Craig*, 497 U.S. 836, 849–50 (1990). In order to apply an exception to the face-to-face meeting rule, the trial court must find that (1) the circumstances requiring the exception further an "important public policy," and (2) the reliability of the testimony is otherwise assured. *Craig*, 497 U.S. at 850; *Haggard*, 612 S.W.3d at 325.

With regard to the question of reliability, a key inquiry is whether the method of testimony preserves the salutary effects of face-to-face confrontation that are relevant to a Sixth Amendment analysis. *Stevens v. State*, 234 S.W.3d 748, 782

4

(Tex. App.—Fort Worth 2007, no pet.). Thus, the courts must consider: (1) whether the statement is given under oath, (2) whether the witness is subject to cross-examination, (3) whether the jury can observe the demeanor of the witness, and (4) the reduced risk that a witness will wrongfully implicate innocent defendants when testifying in their presence. *Craig*, 497 U.S. at 845-46; *Stevens*, 234 S.W.3d at 782; *Dies v. State*, 649 S.W.3d 273, 283 (Tex. App.—Dallas 2022, pet. ref'd).[1]

In this instance, the evidence showed that Hope had tested positive for COVID-19 on the Saturday before trial. At the time of her testimony, she was suffering from fatigue and body aches. She was not scheduled to be out of quarantine for another week, and her physician considered her to be contagious until that time.

The trial court found that it was necessary for Hope to testify through two-way video telecommunication to avoid exposing the virus to jurors, court personnel, the court reporter, clerks, bailiffs, the defendant, the attorneys, and members of the public. It further found that Hope would still be subject to cross-examination, that the technology involved was familiar for the court and everyone involved, that Appellant would be able to sit with counsel and confer with him during the testimony, and that her testimony would—in any event—likely be very brief. The trial court further rejected the option to continue the case because it was concerned— particularly in light of the COVID-19 pandemic—that the jury might not be able to return at a later time.

The trial court's findings are consistent with the requirements of *Craig* and *Haggard*. Specifically, they reflect that the use of two-way testimony ensured the health and safety of all trial participants, furthering an important public policy. *See*

---

[1]In *Dies v. State*, the Dallas Court of Appeals reviewed the trial court's decision to permit a witness that was in quarantine because of an exposure to COVID-19 to testify remotely. 649 S.W.3d at 276.

*Dies*, 649 S.W.3d at 283 ("To the extent that two-way video testimony ensured the health and safety of all trial participants during [the COVID-19] pandemic, it furthered an important public policy of protecting the public.").

Furthermore, the method of two-way telecommunication using Zoom was consistent with the salutary effects of face-to-face confrontation. *See Craig*, 497 U.S. at 845-46. Specifically, it permitted a statement to be given (1) under oath which was (2) subject to cross-examination in a manner in which (3) the jury could observe the demeanor of the witness. *Id.*; *see also Dies*, 649 S.W.3d at 283 (holding that a similar two-way video feed also satisfied the salutary effects articulated in *Craig*). Because Hope's testimony was limited to authenticating the blood sample, and because Officer Moore had already identified Appellant as the person from whom Hope took the blood sample, there was also a limited risk that she would wrongly implicate an innocent defendant. *See Dies*, 649 S.W.3d at 283.

Appellant argues that the trial court could have postponed the trial until Hope was available to testify in person. He also complains that the State created the issue that confronted the trial court by not asking for a continuance prior to jury selection. The record shows that the trial court took these factors into consideration but nonetheless concluded that, given the risk that the jury could not return at a later date and the relatively minor impact that Hope's testimony would have in the case, it was appropriate to proceed. Under such circumstances, it was not error for the trial court to proceed with remote testimony from Hope.

Additionally, even if the trial court erred in allowing Hope to testify by two-way video teleconferencing, such error was harmless. "A denial of physical, face-to-face confrontation is reviewed for harmless error." *Haggard*, 612 S.W.3d at 328 (citing *Coy*, 487 U.S. at 1021). "Constitutional error is harmful unless a reviewing court determines beyond a reasonable doubt that the error did not contribute to the

6

conviction." *Id.* (citing TEX. R. APP. P. 44.2(a)). "In the context of the denial of physical confrontation,. . . . harm must be determined based on 'the remaining evidence.'" *Id*. (citing *Coy*, 487 U.S. at 1021-22).

We first note that Hope's testimony was not necessary to establish any elements of the offense. *See Coy*, 487 U.S. at 1021; *Ellison v. State*, 494 S.W.3d 316, 325 (Tex. App.—Eastland 2015, pet. ref'd). In order to prove Appellant's blood alcohol level at the time of the incident, the State was required to establish a chain of custody between the blood draw and the testing that was performed by McGregor. *Durrett v. State*, 36 S.W.3d 205, 208 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Proof of the beginning and the end of the chain of custody will support admission of the evidence unless there is a showing of tampering or contamination. *Id.* Moreover, the State, through testimony, proved the element of intoxication by means other than Appellant's blood alcohol level being over the legal limit; namely, the State proved that Appellant did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body. *See* PENAL CODE § 49.01(2)(A).

In this case, Officer Moore testified that the blood draw was performed in her presence, and she positively identified the blood sample that was in evidence as the same one that was drawn on the day of the accident. Likewise, Kimberly Holland, a corporal for the criminal investigation division for the Brownwood Police Department, offered testimony regarding the manner in which the department retains evidence and confirmed that she retrieved the blood sample from an assistant police chief prior to bringing it to court. This evidence was uncontroverted by Appellant, and there was no suggestion of tampering or other mishandling of the evidence while it was in the possession of the Brownwood Police Department. Given these

circumstances, Hope's testimony was not necessary to authenticate or establish the chain of custody for the blood sample.

At trial, Appellant argued that Hope's testimony was necessary because the State was required to satisfy the requirements of section 724.017(a) and (a-1) of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.017(a), (a-1) (West 2022). Chapter 724 provides that, for purposes of certain alcohol-related offenses, including driving while intoxicated, a defendant is deemed to have consented to a blood draw when several conditions are met. *Id.* § 724.011(a). Among those conditions are requirements that: (a) someone with appropriate qualifications conducts the blood draw and (b) the specimen is "taken in a sanitary place." *Id.* § 724.017(a), (a-1). These provisions ensure that the process of procuring the evidence did not constitute an unreasonable search or seizure under the Fourth Amendment. *See Schmerber v. California*, 384 U.S. 757, 767 (1966) (Fourth Amendment protects suspects against medical procedures that are made by unqualified personnel).

Appellant's contention that the State was required to show compliance at trial with Section 724.017(a) and (a-1) is incorrect. *See State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011); *Duran v. State*, No. 09-18-00361-CR, 2020 WL 5805951, at *3 (Tex. App.—Beaumont Sept. 30, 2020, no pet.) (mem. op., not designated for publication). Appellant had the burden to produce evidence of a statutory violation. *See Robinson*, 334 S.W.3d at 779; *Duran*, 2020 WL 5805951, at *3. Only if Appellant produced evidence of a statutory violation would the State have the burden to prove statutory compliance. *Robinson*, 334 S.W.3d at 779; *Duran*, 2020 WL 5805951, at *3. Here, Appellant did not show a statutory violation.

In summary, while Hope's testimony may have been relevant to a motion to suppress, it was not independently necessary to establish any of the elements of the

offense.  Furthermore, her testimony was uncontested and limited to issues that were duplicative of other testimony.  Under such circumstances, we conclude beyond a reasonable doubt that, even if the trial court erred in admitting her testimony via remote video-teleconferencing, such an error did not contribute to the conviction. *See Ellison*, 494 S.W.3d at 325.  We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


July 27, 2023

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.