

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0442-17

---

### BRIAN JASON WHITE, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### COLLIN COUNTY

---

**RICHARDSON, J., delivered the opinion for a unanimous Court. KELLER, P.J., filed a concurring opinion in which KEASLER, YEARY, and KEEL JJ., joined.**

### OPINION

Appellant, Brian Jason White, was convicted of one count of engaging in organized

criminal activity and one count of money laundering.[1] The trial court assessed his

---

[1] *See* TEX. PENAL CODE §§ 71.02(a), 34.01(a). White was tried jointly with codefendant, Ronald Robey, who was also found guilty of engaging in organized criminal activity and money laundering. Robey's punishment was also assessed at ten years' imprisonment, suspended for ten years of community supervision. The trial court ordered the sentences to run concurrently and ordered 180 days in jail as a condition of community supervision. The trial court also ordered Robey to pay restitution, along with White, in the amount of $32,822.04.

punishment at ten years imprisonment for each count, suspended for eight years of community supervision. The sentences were ordered to run concurrently, and White was ordered to pay restitution in the amount of $32,822.04. The Fifth Court of Appeals affirmed White's conviction.[2]

The issue before us involves the admission of an audio recording of a conversation between White, his co-defendant Ronald Robey, and a third party named "Brandon." The trial court admitted the recording into evidence over White's objection that it was inadmissible under Texas Code of Criminal Procedure Article 38.23.[3] White argued on appeal that the recording was inadmissible under Article 38.23 because the State failed to prove that the recording was legally obtained and not in violation of Texas Penal Code § 16.02 (illegal wiretapping).[4] The court of appeals held that "the trial court was authorized in finding the admission of the recording was not barred by Article 38.23."[5] We agree with this ultimate conclusion and therefore affirm the judgment of the court of appeals.

---

[2] *White v. State*, No. 05-15-00819, 2017 WL 908787 (Tex. App.—Dallas Mar. 8, 2017).

[3] TEX. CODE CRIM. PROC. art. 38.23(a) provides, in pertinent part, that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas . . . shall be admitted in evidence against the accused on the trial of any criminal case."

[4] TEX. PENAL CODE § 16.02(b) prohibits a person from intentionally intercepting a "wire, oral or electronic communication," or intentionally disclosing or using the contents of a "wire, oral, or electronic communication"obtained in violation of this section. It is an affirmative defense to prosecution of such an offense if the person intercepting the communication is a party to it. TEX. PENAL CODE § 16.02(c)(4)(A).

[5] *White v. State*, 2017 WL 908787 at *4.

**BACKGROUND**

Jason Earnhardt and his wife, complainants, were the sole owners of Earnhardt Restoration and Roofing ("ERR"). They had a business bank account at JP Morgan Chase. In May 2012, Earnhardt hired Ronald Robey as a sales manager to solicit business and hire salespeople to go door-to-door in neighborhoods that had been hail-damaged. Robey hired White and J.D. Roberts. All three signed a "project manager agreement," under which ERR agreed to pay the salesperson 50% of the net profit realized from each roofing job.

In June 2012, a storm hit Dallas and Collin Counties, causing extensive hail damage. Homeowners Mary Lou Thurman and Andrew McAdoo testified that in June 2012, White, on behalf of ERR, solicited business from them to fix their roofs. They each gave a check, payable to ERR, to White. Homeowners Inderjit Sethi, Siva Sankaramanch, and Jessica Carlton testified that in June and July 2012, J.D. Roberts, on behalf of ERR, solicited business from them to fix their roofs. They each gave a check, payable to ERR, to Roberts. All five checks totaled $32,822.04.

In late July 2012, Earnhardt became aware that some of ERR's customers had written checks that he had never received. Earnhardt also learned that ERR had customers he was not aware of. During that same time, ERR started receiving hundreds of calls and emails based on Craigslist ads that Earnhardt had not posted or authorized. As a result, Earnhardt had to shut down ERR's phone system. During that time, Robey had stopped coming to the office, and he had stopped communicating with ERR.

A man named "Brandon" contacted Earnhardt by telephone shortly thereafter. Brandon told Earnhardt that he worked as an IT person for Robey, White, and Roberts. Brandon sent Earnhardt a copy of a recorded conversation on which Robey, Brandon, and White can be heard talking about the Craigslist postings used to "blow the phones up" at ERR. Earnhardt contacted the police.

The police investigation revealed that on July 30, 2012, an assumed name certificate was filed in Collin County under the name Earnhardt Restoration & Roofing, and listing Robey, Roberts, and White as owners. They had all signed the certificate and used it to open bank accounts under ERR's name, listing the three of them as owners of the bank accounts. White, Robey, and Roberts then deposited customers's checks made out to ERR directly into the accounts. Earnhardt was unaware of these accounts and was never given access to them.

Robey, Roberts, and White were all charged with engaging in organized criminal activity and money laundering. White and Robey were tried together. Robey testified at their trial, but White did not. He admitted to entering into a partnership with Roberts and White to file the assumed name certificate, open the bank accounts, and deposit the ERR checks. Robey also admitted that he and Brandon had placed the fake Craigslist ads in order to shut down ERR's phones and prevent Earnhardt from finding out what they were doing. Brandon was not charged in connection with his involvement in these activities.

## THE AUDIO RECORDING

On the first day of trial, the jury was selected and sworn. The jurors were then allowed to leave for the day and instructed to return the next morning. That afternoon, the trial court agreed to hear arguments on the issues raised in the defendants's motions in limine, one of which involved the admissibility of the audio recording. No witnesses were presented at this hearing. The State had indicated that it intended to present as evidence the audio recording Earnhardt received from Brandon and to use Earnhardt to authenticate the audio recording. Defense counsel[6] objected, arguing that Earnhardt could not properly authenticate the recording, and that it was illegally obtained because Earnhardt was not a party to the conversation. Defense counsel asked the court to be able to take Earnhardt on voir dire at the appropriate time during trial in order to show that the recording was inadmissible. The State responded that Earnhardt would be able to identify the three voices on the recording, and that Earnhardt would testify that the recording was given to Earnhardt by Brandon, one of the three people heard in the recording. The trial court judge listened to the recording, and then continued the pretrial hearing. Defense counsel argued that there was "nothing to indicate on the recording itself that anyone was aware that the conversation was being recorded." The trial court judge responded by asking whether there was "anything that says that Brandon was not aware[,] like someone else reportedly gave it to Brandon?"

---

[6] White and Robey were each represented by their own defense attorney. However, when the attorney for Robey objected to the admission of the audio recording, White's counsel joined his objections.

Defense counsel answered that he did not "even know if Brandon is a real person's name or if that's just a made up name." The trial court judge observed that "somebody says Brandon on the audio." Defense counsel concluded his argument by objecting to the recording's admissibility based on the reason that "we don't know where the recording was created[;]" [w]e don't know when the recording was actually created[;]" "[a]nd there's certainly nothing on the recording itself that would suggest that the parties were aware they were being recorded." The trial court ruled that, "assuming the State lays the appropriate predicate," the recording would be admitted because the issues raised by the defense go "more to weight than admissibility."

When the State called Jason Earnhardt to the stand during the trial, he testified that in late July 2012, ERR started receiving hundreds of calls and emails based on fake Craigslist ads. He had to eventually shut down ERR's phone system because of these calls. Earnhardt testified that, shortly thereafter, he received a telephone call from Brandon, and that Brandon sent him a copy of an audio recording. Earnhardt testified that the three voices on the audio recording were Robey's, White's, and Brandon's. Earnhardt testified that he had worked with Robey and White and that they had "very distinct voices." Earnhardt also said that, although he had never met Brandon face-to-face, he recognized his voice as the person who had called him, who had identified himself as Brandon, and who had sent him this recording.

After the State offered the recording into evidence, the trial court then allowed defense counsel to take the witness on voir dire (the jury was not excused at that time). Defense counsel asked Earnhardt several questions regarding Earnhardt's knowledge of the recording and whose voices were on it. No evidence was elicited from Earnhardt indicating that the conversation was recorded by someone other than Brandon. Defense counsel then objected that the audio recording was hearsay, that the State had not established a proper foundation, and that it had not been established to be a "legally-obtained recording."[7] Without any response from the State, the trial court overruled the defense objections and admitted the recording into evidence.

Robey testified in his defense. He said that he did not know that he was being recorded, but he confirmed that the three voices on the recording were his, White's, and

---

[7] A surreptitiously recorded conversation may be considered to be illegally obtained evidence under the Texas Wiretap Statute (Texas Penal Code § 16.02). The Texas Wiretap Statute, Texas Penal Code § 16.02(b), provides that, "[a] person commits an offense if the person:

   (1)    intentionally intercepts, endeavors to intercept, or procures another person to intercept or endeavor to intercept a wire, oral, or electronic communication;

   (2)    intentionally discloses or endeavors to disclose to another person the contents of a wire, oral, or electronic communication if the person knows or has reason to know the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; . . .

TEX. PENAL CODE § 16.02. However, it is an affirmative defense to such offense if the person intercepting the communication is a party to it or gave prior consent. *Id.*

Brandon's. Robey also testified that, although he did not know at the time he was being recorded, he believed that Brandon had recorded the conversation. When asked who Brandon was, Robey responded:

> He was supposed to provide Web site development or build a Web site for us. And that's not my specialty, Web sites and things. So, he was going to built [*sic*] a Web site and Facebook and those kinds of things for our new company that we were trying to start. . . . I believe he was in Mexico. We were sending money orders to San Juan, Mexico to pay him.

Robey testified that he talked to Brandon "twice a day," and he believed that Brandon sent four recorded conversations to Earnhardt. On cross examination, Robey admitted that he and Brandon posted Craigslist ads, and that he "direct[ed Brandon] to post Craigslist ads to shut down Jason Earnhardt's phone system."[8]

---

[8] Robey's testimony was that the Craigslist ads that they posted were false:

Q. Okay. So, this ad, for example, of remodeling a kitchen. Giving away old appliances. That's a lie, right?
*A. Yes, sir.*
Q. I mean, you weren't, were you?
*A. No, sir.*
Q. And you gave Jason's business number for that?
*A. I don't remember exactly.*
Q. You said you need someone to mow your yard. Is that true or is that a lie?
*A. That may have been true.*
Q. Okay. So, when you posted this ad, "Need someone to mow my yard," and then you list 972-855-8204, are there true statements in there or false statements?
*A. I believe the phone number would be a false statement.*
Q. Okay. "Looking to hire a babysitter for my three-year-old," true statement or false statement?
*A. False statement.*
Q. "Looking for a person or company to help me with my business cards," true

On direct appeal, the court of appeals concluded that the audio recording was admissible, stating that, "[s]ince [A]ppellant never produced evidence of a statutory violation, the State never had the burden to prove that Brandon was the person who recorded the conversation. Therefore, the trial court was authorized in finding that the admission of the recording was not barred by Article 38.23."[9] Because the court of appeals decided the case in the way that it did, the following issue was presented to us for review:

> Whether the proponent of evidence at trial has the burden of showing statutory compliance in response to an objection under Article 38.23 (the Texas Exclusionary Rule).

However, this issue cannot be resolved with a bright-line rule, particularly since the facts and circumstances in this case do not lend themselves to a bright-line rule. As explained below, in this particular case, regardless of who may have had the initial burden of proof—whether the defense had the burden to show statutory *non*compliance or the State had the burden to show statutory compliance—there was enough evidence in the record as a whole to support the trial court's decision to admit the recording into evidence. Therefore,

---

statement or false statement?

A. *False statement.*

Q. "Help me move and I'll pay you, in Allen," true or lie?

A. *False.*

Q. "Just moved to the area, and I'm getting rid of these old appliances," true or lie?

A. *That may be false.*

[9] *White v. State*, 2017 WL 908787, at \*6 (citing *State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011)).

as we explain below, although the court of appeals came to the right decision to affirm the conviction, it was unnecessary for the court of appeals to resolve the case on the basis that it did.[10]

**ANALYSIS**

**I.**

As a "general" rule, if a party seeks to have evidence admitted[11] during trial, that party usually has the burden to prove that the evidence is admissible: "In our criminal justice system, the proponent of evidence ordinarily has the burden of establishing the admissibility of the proffered evidence."[12] The proponent of the evidence must identify to the trial court

---

[10] *Wilson v. State*, 448 S.W.3d 418, 422 (Tex. Crim. App. 2014); *Tong v. State*, 25 S.W.3d 707, 711 (Tex. Crim. App. 2000) (noting that a conclusion not necessary to the holding of a case is *dicta*); *State v. Brabson*, 976 S.W.2d 182, 186 (Tex. Crim. App. 1998) (referring to *dicta* as "unnecessary to [the Court's] ultimate disposition of" the case).

[11] Under Texas Rule of Evidence 402, all "[r]elevant evidence is admissible unless any of the following provides otherwise:
- the United States or Texas Constitution;
- a statute;
- these rules; or
- other rules prescribed under statutory authority."
TEX. R. EVID. 402.

[12] *Vinson v. State*, 252 S.W.3d 336, 340 & n.14 (Tex. Crim. App. 2008); *see also Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990) (placing the burden on the prosecutor "as proponent of the evidence . . . to satisfy each element of his predicate for admission of the mother's testimony pursuant to Art. 38.072"); *Meador v. State*, 812 S.W.2d 330, 333 (Tex. Crim. App. 1991) ("The proponent of the statement has the burden of showing . . . that the statement does in fact meet the requirement of Rule 801(e)(2)(E)" of the Texas Rules of Criminal Evidence).

the basis of admissibility for the proffered evidence.[13] "[O]ur statement from *Vinson* remains valid law in Texas."[14]

However, under this general rule, the proponent's burden is not triggered "unless and until" the opponent of the evidence raises "a specific objection" to such evidence.[15] It is only "[o]nce the party opposing the evidence objects . . . [that] the proponent bears the burden of demonstrating its admissibility."[16] In other words, once the party opposing the admission of evidence satisfies their burden of properly objecting,[17] the proponent of the evidence must show, or must have satisfactorily shown, that they have carried their burden of

---

[13] *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) ("It is not enough to tell the judge that the evidence is admissible.").

[14] *Pierson v. State*, 426 S.W.3d 763, 771 (Tex. Crim. App. 2014) (holding that the appellant, as the proponent of the evidence, failed to carry his burden to establish its admissibility, and therefore the evidence was inadmissible).

[15] *Vinson*, 252 S.W.3d at 340; *State v. Esparza*, 413 S.W.3d 81, 86 (Tex. Crim. App. 2013) ("At trial, the proponent of scientific evidence is not typically called upon to establish its empirical reliability as a predicate to admission unless and until the opponent of that evidence raises an objection under Rule 702."); *see also Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994) (In context of Rule 803(24) of the Texas Rules of Criminal Evidence, since the "appellant preserved error by raising an objection, the burden then became the State's to show that the evidence was admissible pursuant to some exception. . . .").

[16] *Id.* (quoting *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995)).

[17] As we recently noted in *Thomas v. State*, No. AP-77,052, 2018 WL 739093 (Tex. Crim. App. Feb. 7, 2018), "[t]he party opposing the evidence carries 'the burden of objecting. . . .'" *Id.* at *42 (citing *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001) (citing *Garcia v. State*, 887 S.W.2d 862, 878 (Tex. Crim. App. 1994)). This "burden" includes the obligation that the objection be "timely" and "state the grounds for the ruling sought by the complaining party with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds are apparent from the context." *Hallmark v. State*, 541 S.W.3d 167, 179 (Tex. Crim. App. 2017) (citing TEX. R. APP. P. 33.1(a)(1)(A)).

demonstrating, by a preponderance of the evidence, that the evidence is admissible.[18]

In this case, defense counsel objected to the admission of the audio recording offered by the State. During the pretrial hearing on the defense's motion in limine, defense counsel argued that the audio recording was illegally obtained:

> It's clearly a surreptitiously recorded conversation between two people or three people that the witness was not a party to. And so he can't consent to it regardless of where and when the recording took place. It's the equivalent of a wiretap, Your Honor, frankly. . . . [W]e don't know where the recording was created. We don't know when the recording was actually created. And there's certainly nothing on the recording itself that would suggest that the parties

---

[18] *Vinson*, 252 S.W.3d at 340 (citing *Idaho v. Wright*, 497 U.S. 805, 816 (1990)); *see also*, *De La Paz v. State*, 273 S.W.3d 671 (Tex. Crim. App. 2008) ("Once appellant objected to the admission of the notes under *Crawford*, the burden shifted to the State, as the proponent of that evidence, to establish that it was admissible under *Crawford*." (citing *Vinson*, 252 S.W.3d at 340); *see also Robinson*, 334 S.W.3d at 782 (Cochran, J., concurring) (noting that, at trial, the State's burden to establish the admissibility of its evidence is by a preponderance of the evidence (citing TEX. R. EVID. 104(a))); *Vinson*, 252 S.W.3d at 339–40 & n.14 (citing *Alvarado v. State*, 912 S.W.2d 199, 215 (Tex. Crim. App. 1995) ("The State, as the proponent of the evidence, had the burden of proving to the trial court, by a preponderance of the evidence, that . . . testimony qualified as an adoptive admission under Rule 801(e)(2)(b).")); *Vasquez v. State*, 411 S.W.3d 918, 920, n.11 (Tex. Crim. App. 2013) (noting that the State must prove by a preponderance of the evidence that the accused's statement was voluntary under Texas Code of Criminal Procedure Article 38.22 (citing *Alvarado*, 912 S.W.2d at 211)); *Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994) ("Since appellant preserved error by raising an objection to the hearsay, the burden then became the State's to show that the evidence was admissible pursuant to some exception to the hearsay rule."); *Meador v. State*, 812 S.W.2d 330, 333 (Tex. Crim. App. 1991) (holding that, when the State is the proponent of hearsay evidence, it has the burden of proving its admissibility under the hearsay rules by a preponderance of the evidence); *cf. State v. Medrano*, 127 S.W.3d 781, 787 (Tex. Crim. App. 2004) (holding that *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) did not overrule *Zani v. State*, 758 S.W.2d 233 (Tex. Crim. App. 1988), and continuing to hold that the proponent of expert scientific testimony has the burden to show its relevance and reliability by clear and convincing evidence in order to be admissible); *but see Medrano*, 127 S.W.3d at 788 (Womack, J., concurring) & *Medrano*, 127 S.W.3d at 792 (Cochran, J., concurring, joined by Keller, P.J. and Holcomb, J.) (noting that the burden of proof to show admissibility of scientific evidence should be by a preponderance of the evidence, not clear and convincing).

were aware they were being recorded.[19]

At that time defense counsel did not specifically argue that the evidence was inadmissible under Article 38.23. However, his pre-trial argument that the recording was "the equivalent of a wiretap" was sufficient to alert the trial court and the State that defense counsel was going to oppose the admission of the recording because he claimed it was illegally obtained.

When the State offered the evidence at trial, defense counsel attempted, during his voir dire of the complainant, to establish that the recording was illegally obtained. We note that, when a party seeks to establish the absence of something, such as the lack of a warrant or, as in this case, the absence of consent, this can be done by questioning a witness. After defense counsel questioned Earnhardt in an attempt to establish the illegality of the recording, he again objected to the admission of the recording: "I'll object as to hearsay. I don't think they've established a proper foundation, and I don't think that they've established that it was a legally-obtained recording as well, Your Honor." Again, although defense counsel did not specifically cite to Article 38.23 in his objection, the record made it clear that the trial court understood the legal basis for the objection.[20] The trial court overruled the objections and admitted the recording. Defense counsel did not request an Article 38.23 jury

---

[19] Defense counsel also argued that the audio recording was not properly authenticated. However, the issue of authentication, and the court of appeals's analysis of authentication under Rule 901(a), is not before us.

[20] *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009) (holding that "a party need not spout 'magic words' or recite a specific statute to make a valid objection" (citing *Rivas v. State*, 275 S.W.3d 880, 887 (Tex. Crim. App. 2009))).

instruction.[21]

———————————

[21] In *Holmes v. State*, 248 S.W.3d 194 (Tex. Crim. App. 2008), we observed that whether evidence is inadmissible because it was illegally obtained, and whether evidence can be considered by a jury in determining guilt are "two distinct issues: One is a legal question of admissibility for the judge and the other is a question of disputed fact for the jury's consideration and resolution." *Holmes*, 248 S.W.3d at 196 (citing *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007)). In *Pierce v. State*, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000) (footnotes and citations omitted), we explained that the two sentences in Article 38.23(a) speak to two different concepts:

> The first sentence speaks to the admissibility of evidence: "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." The admissibility of evidence is a matter for the court. The decision to exclude evidence could be determined by a ruling of law, a finding of fact, or both. The question of admissibility could be raised by an objection when the evidence is offered. Since 1966 it has been possible to raise the question by a motion to suppress evidence, which can be filed, presented, heard, and ruled on before the trial begins.

> The second sentence of the statute speaks to the jury instruction: "In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such evident, the jury shall disregard any such evidence so obtained." This sentence can operate only if the trial court has admitted evidence, and only if there is a contested issue of fact about the obtaining of the evidence. This has been our holding from the earliest days of the statute, and it is our holding today. There is no issue for the jury when the question is one of law only.

"[T]he central issue on an article 38.23 instruction is not the *admissibility* of the evidence, but rather, the evidence's *consideration* by the jury." *Holmes v. State*, 248 S.W.3d at 198 (emphasis in original). "This Court has long held that there is a definite distinction between the admissibility of evidence under Article 38.23 (which is decided solely by the trial judge) and the jury's role under Article 38.23 in considering evidence that has been admitted." *Id*. at 199.

In *Holmes*, we expressly approved of our unpublished opinion in *Hromadka v. State*, No. 1329-00, 2003 WL 1845067 (Tex. Crim. App. 2003). *Holmes*, 248 S.W.3d at 196 ("Today we affirm the validity of [*Hromadka* and similar] holdings"). In *Hromadka*, this Court held that the issue of admissibility of evidence under Article 38.23 is independent of the issue given to the jury in the charge, which is whether the evidence may be considered in reaching a verdict. *Hromadka*, 2003 WL 1845067 at *1. Article 38.23(a) requires an instruction only when "'the legal evidence raises an issue' as to whether the evidence objected to was illegally obtained." *Id*. at *2. Thus, it is clear that an Article 38.23 instruction is required only if there is a factual dispute about how the evidence was obtained.

## II.

Although the proponent of evidence ordinarily has the burden to establish admissibility, it has long been held that when the defendant has filed a motion to suppress challenging the admissibility of evidence under the Fourth Amendment, that defendant has the burden to produce some evidence at the hearing on the motion to suppress in order to prove that the evidence was illegally obtained.[22] Even though it has been observed that the

*Renteria v. State*, 206 S.W.3d 689, 704 (Tex. Crim. App. 2006) (citing *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)).

    As we explain in this opinion, defense counsel set out his objection to the recording and attempted to produce evidence of a factual dispute regarding the legality of the recording through his cross examination and voir dire examination of Earnhardt. The State had already established, through Earnhardt's testimony, that Brandon's voice was on the recording and that Brandon sent Earnhardt the tape. Defense counsel was unable to establish a factual dispute since Earnhardt's testimony did not change, and it remained uncontested. Therefore, the trial court correctly held that the evidence of the recording was admissible. And, without a factual dispute about how the evidence was obtained, even if defense counsel had requested an Article 38.23 instruction, he would not have been entitled to one, particularly since Robey admitted that Brandon recorded the conversation and provided the tape to Earnhardt. Therefore, White did not establish that there was an issue of fact in dispute because he presented no evidence controverting the evidence presented by the State. *See Issue of Fact*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("A point supported by one party's evidence and controverted by another's.").

[22] *See State v. Klima*, 934 S.W.2d 109, 111 (Tex. Crim. App. 1996) ("In the instant case appellee, by bringing the motion to suppress, bore the burden of establishing all of the elements of her Fourth Amendment claim."); *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011) ("When a defendant asserts a search and seizure violation under the Fourth Amendment, the defendant bears the burden of producing evidence to rebut the presumption of proper conduct by law enforcement. A defendant can satisfy this burden with evidence that the seizure occurred without a warrant."); *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013) ("On a motion to suppress evidence, the defendant bears the initial burden of producing some evidence that rebuts the presumption of proper police conduct. Once the defendant meets this burden by establishing that the search or seizure occurred without a warrant, the burden shifts to the State to prove the search or seizure was prompted by reasonable suspicion that an individual was violating the law."); *Delafuente v. State*, 414 S.W.3d 173, 176 (Tex. Crim. App. 2013) ("In a hearing on a motion to suppress for violation of Fourth Amendment rights, a defendant must offer evidence that rebuts the presumption of proper police

burden shouldered by the defendant in a motion to suppress hearing is different from the State's burden to prove admissibility at trial,[23] this Court has said before that "[a] 'motion to suppress' evidence is nothing more than a specialized objection to the admissibility of that evidence."[24] In fact, in 1977, in *Roberts v. State*, this Court explained that,

> The defendant's counsel may either file a pretrial motion to suppress evidence or he may wait until the trial on the merits and object when the alleged unlawfully obtained evidence is offered. The trial court, to determine whether there is probable cause for an arrest, has the option of either hearing a motion to suppress the evidence prior to trial or of the [*sic*] waiting until the defendant's counsel makes an objection at the trial on the merits when the alleged unlawfully obtained evidence is offered. Whether the issue of the unlawful arrest is presented in a pretrial hearing to suppress or during the trial on the merits, the State has the burden of showing that there was probable cause for a warrantless arrest. Contrary to the appellant's argument there is no difference in the State's burden of proof whether the issue is presented at a pretrial motion to suppress hearing or at the trial on the merits.[25]

---

conduct, such as by alleging that the search or seizure was executed without a warrant.").

[23] *See State v. Robinson*, 334 S.W.3d 776, 780–82 (Tex. Crim. App. 2011) (Cochran, J., concurring) ("Mr. Robinson contends that the State has the burden to show compliance with the State statute concerning the blood draw. Indeed it does—at trial. As the proponent of evidence at trial, the State must fulfill all required evidentiary predicates and foundations. Thus, at trial, the State will be required to offer evidence that the blood was drawn by a qualified person before evidence of the blood, the blood test, and the blood test results are admissible. Its burden at trial is to establish the admissibility of its evidence by a preponderance of the evidence.").

[24] *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (op. on reh'g); *see also Ford v. State*, 305 S.W.3d 530, 535 (Tex. Crim. App. 2009) (discussing the trial judge's "important 'gatekeeping' role" to resolve questions of admissibility of evidence, "regardless of whether those questions are determined in a pre-trial hearing or at some time during trial.").

[25] *Roberts v. State*, 545 S.W.2d 157, 158–59 (Tex. Crim. App. 1977) (citations omitted).

In equating the State's burden at a pretrial motion to suppress to its burden to prove admissibility during trial, this Court in *Roberts* evidently presupposed that the defendant had already met the initial burden of establishing the absence of a warrant. Thus, we can arguably interpret *Roberts* as supporting the conclusion that, in a case involving a warrantless arrest, search, or seizure, it would appear that, whether the defendant brings a *pre-trial* motion to suppress, or objects *at trial*, the defendant would still have to initially prove that there was no warrant.[26]

In this case, citing to this Court's decision in *State v. Robinson*,[27] the court of appeals followed the rule regarding who has the burden of proof in a motion to suppress hearing instead of following the general rule regarding who has the burden to establish admissibility at trial, and it assigned the same burden of proof to White as if he had brought a pre-trial motion to suppress. In *Robinson*, this Court held that the defendant seeking to have evidence suppressed had the burden of producing evidence of "a statutory violation" before the burden shifted to the State to prove statutory compliance. In *Robinson*, because the defendant "never produced evidence of a statutory violation," this Court held that the trial court "erroneously

---

[26] *See also Holmes v. State*, 248 S.W.3d at 199 (noting that, "The defendant may challenge the admissibility of evidence in either of two ways: (1) he may object to the admission of the evidence at the time it is offered at trial and request a hearing outside the presence of the jury; or (2) he may file a pretrial motion to suppress evidence and have it heard and ruled upon before trial. Trial judges 'have an obligation to entertain evidence and argument on exclusionary rule objections and to *independently* and *definitively* resolve questions of law and fact presented by such objections.") (emphasis in original).

[27] *State v. Robinson*, 334 S.W.3d 776 (Tex. Crim. App. 2011).

placed the burden of proving statutory compliance on the State."[28]  In this case, following

*Robinson*, the court of appeals held that, since White "never produced evidence of a statutory

violation, the State *never had the burden* to prove that Brandon was the person who recorded

the conversation."[29]

## III.

We agree with the court of appeals's holding that the trial court did not err in

admitting the audio recording. But it was unnecessary for the court of appeals to rely on

*Robinson* to support its holding.  Nevertheless, while we may not agree with the court of

appeals's blanket adoption of *Robinson* as the controlling authority under these facts, we are

not prepared to distinguish *Robinson* and similar cases[30] from this case simply because those

cases were decided in the context of a pre-trial motion to suppress.[31]  This case can instead

be decided based on the evidence in the record as a whole, not based on who had the initial

burden of proof.  We hold that the preponderance of the evidence before the trial court

established that the audio recording was admissible.

---

[28] *Id*. at 778; *see also United States v. Evans*, 572 F.2d 455, 486 (5th Cir. 1978) ("The burden is on the movant to make specific factual allegations of illegality, to produce evidence, and to persuade the court that the evidence should be suppressed.").

[29] *White*, 2017 WL 908787 at *4 (emphasis added).

[30] *See* note 22, *supra*.

[31] *See also Romo v. State*, 577 S.W.2d 251, 252 (Tex. Crim. App. 1979) ("[A] judge is often not in a position to decide on the admissibility of evidence prior to the beginning of trial.").

During the trial, the State presented evidence, through Earnardt's testimony, that Earnhardt received a call from Brandon. Earnhardt testified that Brandon gave him the copy of the recording. He identified Brandon's voice on the recording because he had talked to him on the phone. This testimony was uncontroverted. No evidence was elicited from Earnhardt, or from any other witness, indicating that the conversation between White, Robey, and Brandon was recorded by someone other than Brandon, or that the recording was made without Brandon's consent, or that the recording was furnished to Earnhardt by anyone other than Brandon.

By the time defense counsel objected to the admission of the recording during Earnhardt's testimony, the State had *already* presented enough evidence to prove by a preponderance of the evidence that Brandon had recorded the conversation, and that evidence supported the State's position that the recording had been legally obtained. White presented no additional evidence to contradict the evidence that had been presented by the State. In fact, the record contains evidence elicited *from the defense* confirming that Brandon had recorded the conversation and sent the recording to Earnhardt because Robey admitted that fact when he testified for the defense.[32]

---

[32] When asked *by his own attorney* (who had previously objected to the admission of the recording) whether he knew who recorded the conversations, Robey testified as follows:

> Q.    You didn't know you were being recorded, of course?
> *A.    No, sir.*
> Q.    Who was it that recorded that?

In light of the evidence that was presented by the State, supporting its position that the recording was legally obtained, and without *any* controverting evidence presented by White to support his position that the recording was illegally obtained in violation of § 16.02, we hold that the evidence presented by the State was sufficient to establish, by a preponderance of the evidence, that the audio recording was admissible.[33]  Thus, the trial court judge did not abuse her discretion in admitting the audio recording into evidence.  We therefore affirm the judgment reached by court of appeals.

DELIVERED:      June 13, 2018

PUBLISH

---

> A.      *I think his name was Brandon.*
> * * *
> Q.      Did you have lots of conversations with this guy?
> A.      *Every day.  Twice a day.  Things like that..*
> Q.      Were there other – to your knowledge were there other recordings?
> A.      *To my knowledge there was four different recordings that were sent to Jason* [*Earnhardt*].
> * * *

When Robey was asked why he and White were asking Brandon to help them post the false Craigslist ads, Robey admitted the following:

> Q.      You were trying to make sure he [Earnhardt] didn't find out what you were doing.  Isn't that right?
> A.      *Yes, sir.*
> Q.      And you knew if he found out what you were doing, there was a chance he would intervene.  Is that right?
> A.      *For sure.*
> Q.      Which when he did find out, he did intervene?
> A.      *For sure.*

[33] The other issue raised challenging the admissibility of the recording—the issue of authentication of the audio recording under Rule 901(a)—was resolved by the court of appeals.  That issue is not before us.